IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


UNITED STATES OF AMERICA

VERSUS                                              CRIMINAL NO. 1:03cr89WJG-JMR
                                                    CIVIL ACTION NO. 1:05cv201WJG-JMR

KEITH NAVAIO MULLEN


O R D E R


   This cause comes before the Court on defendant Keith Navaio Mullen's motion to vacate and set aside or correct his previously imposed sentence [111-1] pursuant to 28 U.S.C. § 2255. Mullen's petition, filed April 29, 2005, advances, *inter alia,* his allegation that the waiver of appeal in his Memorandum of Understanding [MOU] was not made knowingly and voluntarily. (*Habeas* pet., p. 1.)  He also claims he was not informed by his attorney that he faced an enhanced sentence due to his career offender status, and that his counsel provided ineffective assistance.  (*Id*.)  Mullen further contends that the United States of America [United States] breached the MOU in two regards.  (*Id*., p. 2.)  First, he claims that the United States used information against him protected under United States Sentencing Guidelines [USSG] § 1B1.8. (*Id*.)  Second, he contends that the United States breached the agreement when it failed to move for a reduction of his sentence under USSG § 5K1.1 at the time of his sentencing hearing.  (*Id*.) He claims that his Fifth and Sixth Amendment Due Process rights were violated, that *United*

-1-

*States v. Booker*[1] should be applied retroactively on collateral review, and that his sentence was illegally enhanced under *United States v. Apprendi*[2]. (*Id.*)

Mullen was indicted in a three-count indictment on October 7, 2003. (Ct. R., Doc. 33.) Mullen was charged in Count 1 with conspiracy to knowingly and intentionally possess with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of cocaine hydrochloride; in Count 2 with aiding and abetting the aforementioned conspiracy; and Count 3 was a related forfeiture count. (*Id.*) He pleaded guilty on February 2, 2004, pursuant to a Memorandum of Understanding [MOU] signed the same date. (Ct. R., Docs. 72, 74.) Mullen filed a motion to extend time to object to the Presentence Report [PSR] on April 9, 2004. (Ct. R., Doc. 90.) It appears that when the United States dismissed Count 2 of the indictment, Mullen's motion for extension of time was terminated. (Ct. R., docket entry on May 26, 2004.) Defendant's sentencing on Counts 1 and 3 of the indictment was held May 3, 2004. (Ct. R., Doc. 94.)

According to the United States, Mullen waived his rights to appeal his conviction, his sentence, or to seek post-conviction relief. (Ct. R., Doc. 115, p. 3.) The United States argues that Mullen was advised during the plea colloquy that he was waiving his rights. (*Id.*, p. 4.) The United States further contends that the MOU provided that a sentencing departure under USSG § 5K1.1 or under 18 U.S.C. § 3553(e) are presented at the discretion of the United States, following substantial assistance on the part of the defendant. (*Id.*, p. 5.) The United States asserts that Mullen had not provided substantial assistance at the time Mullen was sentenced,

---

[1] *United States v. Booker,* 543 U.S. 220 (2005).

[2] *Apprendi v. New Jersey*, 430 U.S. 466 (2000).

although it acknowledged that Mullen later cooperated affording himself the possibility of a Rule 35 motion at a later date. (*Id*.)

Contrary to Mullen's claims concerning his counsel Robert Harenski's performance on his behalf, the United States argues that Harenski did not provide ineffective assistance of counsel. (*Id*.) Harenski argued that Mullen should only be held accountable for 444.10 grams of cocaine hydrochloride which was seized on September 11, 2003. (*Id*., p. 6.) The $40,000 seized contemporaneously with the 444.10 grams of cocaine hydrochloride would be equivalent to the sale price of the remainder of the 2.5 kilograms of cocaine hydrochloride that Mullen was held accountable for in his sentencing, according to the United States. (*Id*.) Mullen allegedly told agents at the time of his arrest that he watched co-defendant, Marion Earl Simpson, and two other people convert a large quantity of cocaine hydrochloride into crack, which provided further evidence for the larger drug quantity. (*Id*.) Mullen agreed with the factual summary of the parameters of the crime offered by the United States at his plea on February 2, 2004. (Ct. R., Doc. 107, p. 16.)

The United States maintains that if Mullen had decided not to plea, but rather went to trial and was convicted, he would have faced a sentence of between 262-327 months, based on the facts of the case, Mullen's criminal history, and had he not received a three level reduction in sentence for acceptance of responsibility. (Ct. R., Doc. 115, p. 8.)

The United States asserts that the issue raised under USSG § 1B1.8 was addressed at sentencing and was found to lack merit, as do Mullen's arguments under *Apprendi* and *Booker*. (*Id*., pp. 8-12.) Finally, the United States avers that it did not breach the MOU by not filing a motion to reduce Mullen's sentence under USSG § 5K1.1 because at the time of sentencing he

had not provided substantial assistance. (*Id*., p. 11.)  There remains the possibility that a motion under FED.R.CRIM.P 35 may be filed in the future based on Mullen's assistance. (*Id*.)

According to Mullen, he was not told of the waiver of appeal by his attorney and he claims that the Court did not adequately inform him of the waiver, citing *United States v. Robinson*, 187 F.3d 516 (5th Cir. 1999). (Ct. R., Doc. 116, p. 2.)  Mullen claims that Harenski was ineffective because he allegedly failed to notify Mullen that he would be sentenced as a career offender. (*Id*., pp. 3-4.)  He claims he would have received a significantly lower sentence if he pleaded with an agreement to cooperate had he known about his offender status and had Harenski investigated his circumstances more thoroughly. (*Id*.)  He contends that there was no evidence to support the finding that the $40,000 found at the time of his arrest was the proceeds from selling 2 kilograms of cocaine hydrochloride. (*Id*., p. 5.)

Mullen argues that under *Booker*, the use of USSG § 4B1.1 was erroneous and that his sentence would be lower if that guideline section were not used to determine his sentence. (*Id*., p. 6.)  He contends that although *Booker* does not apply retroactively, his claims under *Booker* are viable under *Apprendi*. (*Id*., p. 9.)  He also argues that he is entitled to a downward departure under Rule 35. (*Id*., p. 8.)

I.   Voluntary Plea

Federal courts must uphold a guilty plea challenged in a *habeas* petition if the plea was made knowingly, voluntarily and intelligently.  *Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000), *cert. denied* 532 U.S. 1067 (2001); *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995).  A plea of guilty waives a number of constitutional rights.  *Boykin v. Alabama,* 395 U.S. 238, 242-3, (1969); *Joseph v. Butler,* 838 F.2d 786, 789 (5th Cir. 1988).  The Fourteenth Amendment Due

Process Clause imposes certain requirements to ensure the validity of a guilty plea. *Fischer v. Wainwright,* 584 F.2d 691, 692 (5th Cir. 1978) (citing *Brady v. United States,* 397 U.S. 742, (1970). *"Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson,* 201 F.3d 353, 368 n.22 (5th Cir. 2000). In addition, "the voluntary and intelligent nature of the plea [must] be apparent on the face of the record." *See Holloway v. Lynaugh,* 838 F.2d 792, 793 (5th Cir. 1988). In determining if an appeal of sentence is barred by a waiver of appeal provision in a plea agreement, the Court must investigate whether the waiver was knowing and voluntary and whether the waiver applies to the circumstances at hand, based on the plain language of the agreement. *United States v. Bond*, 414 F.3d 542,544 (5th Cir. 2005).

      A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley v. United States,* 523 U.S. 614, 618 (1998). In determining whether a plea is voluntary and intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley,* 933 F.2d 325, 329 (5th Cir. 1991) (quoting *Boykin,* 395 U.S. at 244). The consequences of a guilty plea means only that the defendant knows the direct consequences of his plea, which includes "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell,* 292 F.3d 414, 416 (5th Cir. 2002).

The record contains a transcript of the plea colloquy which set forth all questions asked by the Court and the responses of Defendant, his counsel, and the Assistant United States Attorney [AUSA].  (Ct. R., Doc. 107.)

In addition, the MOU provides as follows regarding Mullen's waiver of appeal.  (Ct. R., Doc. 72.)

Mullen now claims he was not aware of the waiver of appeal provision within the MOU, and that his answers to the Court's questions during the plea colloquy are not sufficient to establish that the waiver was knowing or voluntary.  (Ct. R., Doc., 116, p. 2.)  Mullen does not assert that his waiver was not voluntarily given, but rather contends that he was not fully aware of the consequences of a waiver regarding an appeal.  (*Id.*)  "[W]hen the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he has raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal."  *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005.)

The Court finds the plea colloquy adequately establishes that Mullen's plea was knowing and voluntary.  *United States v. Salado*, 339 F.3d 285, 293 (5th Cir. 2003).  The Court therefore finds no grounds to grant *habeas* relief based on any claim that may arise that Mullen's plea was not knowingly or voluntarily entered, or that he did not fully understand the consequences or parameters of the MOU, including the sentence.  *Blackledge v. Allison,* 431 U.S. 63, 73 (1977).

II.     Ineffective Assistance of Counsel

Mullen contends that Harenski provided ineffective assistance of counsel.  (Ct. R., Doc.111, p. 6.)  Mullen's claim of ineffective assistance of counsel can be proven by showing:

(1) that Harenski's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995). In circumstances involving a defendant's guilty plea, the prejudice requirement under *Strickland* "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). Mullen "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Mullen claims that Harenski failed to notify him that he would be subject to sentencing as a career offender, and contends that had Harenski conducted an investigation, he would have realized that Mullen faced sentencing as a career offender. (Ct. R., Doc. 111, pp. 9-10, 12-16.) Mullen states that Harenski's assistance was ineffective because he did not object to the quantity of drugs used to calculate Mullen's sentence. (*Id*.) Mullen asserts that because Harenski allegedly misled or misinformed him about these aspects, he did not make an informed decision to plea. (*Id.*) Mullen claims he would have gone to trial had he realized he would be sentenced as a career offender. (*Id*., p. 18.)

The sentencing hearing clearly establishes that Harenski objected to the quantity of drugs attributed to his client for sentencing purposes and argued the possibility of a violation of USSG § 1B1.8. (Ct. R., Doc. 106.) According to the record, Harenski filed written objections to the PSR in this case. (*Id*., p. 3.) Mullen admitted that Harenski discussed relevant conduct with him during frequent visits and phone calls between Mullen and Harenski. (Ct. R., Doc. 111, pp. 9-17.) Although Mullen claims he did not know he faced sentencing as a career offender, he

certainly was aware of his own prior criminal record.  (*Id*., p. 17.)  Mullen proffered his connection to a large quantity of cocaine on September 15, 2003.  (Ct. R., Doc. 111, Exh. C.)

Mullen was specifically questioned at his plea hearing on February 2, 2004, concerning the maximum possible sentence and penalty associated with the charges outlined in Count 1 of the indictment.  (Ct. R., Doc. 107, p. 10.)  Mullen answered affirmatively that he understood the charges.  (*Id*., p. 11.)  He was also questioned about the MOU, and stated that he had read the MOU, discussed its provisions with his attorney, signed it, and that it correctly contained the entire agreement reached between himself and the United States in this case.  (*Id*., pp. 12-13.)  Mullen also acknowledged he understood that the Court could impose any sentence in the case despite the United State's recommendations, and that he was waiving his right to appeal or contest the sentence in any post-conviction setting.  (*Id*., pp. 13-14.)

The MOU provided that he could receive a sentence of not less than five years and not more than forty years imprisonment, that his sentence would be imposed in accord with the sentencing guidelines, that the Court could sentence Mullen to the statutory maximum, that Mullen was not relying on anyone's calculation of a particular guideline range for the relevant offense and he understood that he may be sentenced to the maximum penalties that the charges carried at the court's discretion.  (Document No. 72, pp. 2- 3.)

In cases involving a guilty plea in which the defendant claims ineffective assistance of counsel, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill,* 474 U.S. at 59.  In other words, Mullen "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Glinsey*, 209

F.3d 386, 392 (5th Cir. 2000), *cert. denied* 531 U.S. 919.  Unfortunately for Mullen, the record establishes anything but this standard.  The Court finds no merit to Mullen's attempt to attack Harenski's professional competence and further finds no reason to conclude that "but for" Harenski's performance and advice, Mullen was convicted of a crime for which he had no involvement.

The Court concludes that Mullen fails to meet the first prong of *Strickland* in this claim, and has not shown that Harenski's performance was deficient.  In light of these findings, the Court fails to find any evidence in the record supporting Mullen's contentions regarding Harenski's performance.  *See Coleman v. Thompson*, 501 U.S. 722 (1991); *United States v. Harris*, 408 F.3d 186, 189 (5th Cir. 2005), *cert. denied* ___ U.S. ___, 126 S.Ct. 297.  Furthermore, Mullen failed to make the requisite showing that his defense was prejudiced by Harenski's actions.  *Strickland*, 466 U.S. at 694.

In determining whether a counsel's performance was deficient, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689.  The Court has reviewed Mullen's contentions and concludes that there was nothing deficient in Harenski's performance regarding the Defendant's sentencing hearing.

III.    Due Process Violations and Retroactive Application of *Booker*

Mullen asserts his rights under the Fifth and Sixth Amendment were violated and argues that *Booker* should be applied retroactively on collateral review.  (Ct. R., Doc. 111, pp. 24-32,

37.)  Again, unfortunately for Mullen, *Apprendi, Booker* and *Blakely*[3] do not apply retroactively on collateral review for purposes of a motion to vacate.  *In re Elwood*, 408 F.3d 211 (5th Cir. 2005) (*per curiam*); *United States v. Edwards*, 442 F.3d 258, 268 (5th Cir. 2006); *see United States v. Doggett,* 230 F.3d 160, 166 (5th Cir. 2000); *United States v. Guevara*, 408 F.3d 252, 261-2 (5th Cir. 2005).  Accordingly, the Court finds no grounds for granting Defendant *habeas* relief on these claims.

IV.	United States' Failure to Move for Sentence Reduction

Under the terms of the MOU in this case, the United States promised to file a motion for downward departure pursuant to USSG § 5K1.1.  (Ct. R., Doc. 72, p. 3.)  If Mullen's assistance was not completed at the time of sentencing, the United States would file a motion for sentence reduction under Rule 35 of the Federal Rules of Criminal Procedure, within one year of Mullen's sentencing.  (*Id.*)

The United States Attorney may choose in his absolute discretion to file a motion under 18 U.S.C. § 3553, or under USSG § 5K1.1, or under both provisions if the MOU provides that the United States retains that discretion, as in this case.  "[Section] 5K1.1 does not require the [United States] to move for a downward departure if the defendant provides substantial assistance, but rather grants the [United States] discretionary power to make such a motion." *United States v. Garcia-Bonilla,* 11 F.3d 45, 46 (5th Cir. 1993).  Should such a motion be filed, the granting of relief and the extent of relief is left solely to the discretion of the Court.  *United States v. Desselle*, 450 F.3d 179, 182 (5th Cir. 2006).

---

[3]*Blakely v. Washington*, ___ U.S. ___, 124 S.Ct. 2531 (2004).

In accordance with the terms of the agreement signed by Defendant, the filing of any substantial assistance motion was discretionary with the United States and the relief granted, if any, was also discretionary with the Court. The MOU did not set forth a guarantee that such a motion would be filed or granted. Mullen agreed when questioned that the MOU was the complete agreement between himself and the United States, and that were are no other agreements. (Ct. R., Doc. 107, p. 13.) Harenski stated in his affidavit that he told Mullen that the United States had the sole discretion in determining whether Mullen provided substantial assistance. (Ct. R., Doc. 113, p. 7.) Harenski also avers that the AUSA told him that a motion under Rule 35 would be filed on Mullen's behalf by the United States. (*Id.*) The United States contends that Mullen's assistance prior to sentencing was not substantial. (Ct. R., Doc. 115, p. 11.)

Mullen offers that the United States never intended to fulfill the MOU with respect to filing a Rule 35 motion. (Ct. R., Doc. 111, p. 36.) He claims, "[t]he language of the plea agreement was written in bad faith and it was prosecutorial vindictiveness to pursue an invalid sentence under these deceiving methods." (*Id.*) He offers no evidence to support these assertions. In addition, Mullen acknowledged under oath that he understood that the MOU contained the entire agreement between himself and the United States in this case. (Ct. R., Doc. 107, p. 13.)

The Court finds that the terms of the MOU place the discretion for filing a motion under Rule 35 or USSG § 5K1.1 within the sole province of the United States based upon its evaluation of the information provided by Defendant. Here, the MOU between Mullen and the United States expressly states: "[i]n either case, the defendant understands that the determination as to

whether he has provided "substantial assistance" to warrant a motion for downward departure of a Rule 35 motion is in the sole discretion of the [United States]." (Ct. R., Doc. 72, p. 3.) The terms of the MOU create no obligation upon the United States to file a motion on Mullen's behalf. The United States has indicated, although indirectly, that its evaluation of the information provided by Mullen does not qualify him for a Rule 35 motion. Mullen has not shown any unconstitutional motive for the failure to file a motion. The Court finds no grounds to grant *habeas* relief on the basis of Mullen's claims regarding the United States' failure to file a motion on his behalf.

V.      Alleged Breach of MOU under USSG § 1B1.8

Mullen claims that his MOU was breached when the United States used the non-prosecution proffer presented by Mullen as support for the case against him in his plea. (Ct. R., Doc. 116, p. 5.) Mullen's MOU provides as follows:

> 1. If the defendant enters a plea of guilty to Count One, charging a violation of Section 846, title 21, United States Code, being Conspiracy to Possess with Intent to Distribute Controlled Substance of the Indictment in Criminal No. 1:03cr89GRo, and Count 3, the forfeiture count; if he fully performs under the forfeiture paragraph of this agreement, and if he fully cooperates with the [United States] concerning any illegal activities of which he has knowledge as specified in paragraph 9;
>
> * * *
>
> 2. Thereafter, the United States Attorney will recommend that the Court accept the defendant's plea of guilty, and, as to sentencing, the Government will do the following:
>
> * * *
>
> 9. It is further understood that the full cooperation referred to in Paragraph No. 1 includes: (1) immediate truthful disclosure of all matters involved in this matter to the appropriate federal agents; (2) disclosure of other matters involving

>possible violations of Federal law to the appropriate federal agency as directed by the United States Attorney; (3) testimony as trial(s) involving any matter arising from this matter; (4) testimony before any grand jury or at any trial in this or any other district on any matter about which the defendant has knowledge and which is deemed pertinent to the United States Attorney; and (5) full performance in accordance with the forfeiture paragraph of this agreement.
>
>*　*　*
>
>In addition, should the defendant fail to cooperate truthfully and completely with the [United States], or if the defendant engages in any additional criminal conduct, the defendant shall not be entitled to consideration pursuant to this paragraph.

(Ct. R., Doc. 72, pp. 3-4.)

The United States also agreed that "no information given by [Mullen] . . . will be used against [him] in any criminal case, except as described in Paragraph 2, and except for a prosecution for perjury, and except if the defendant violates any provision of this [MOU], particularly Paragraph 9, in which event it is specifically understood and agreed that all information given by the defendant, or derivatives thereof, shall be admissible in any proceedings against the defendant, including sentencing." (*Id.*, p. 4.)

The base offense level assigned to Mullen was 28, and under USSG § 4B1.1, he was found to be a career offender which resulted in an offense level of 34. (Ct. R., Doc. 106, pp. 9-10.) His offense level was reduced to 31 after a 3-level reduction for acceptance of responsibility. (*Id.*, p. 10.) Because he had 14 criminal history points, he was placed in category IV, and would be in that category regardless of his history because he was considered a career offender. (*Id.*) The guideline range for the total offense level of 31 and criminal history category of IV, resulted in a sentencing range for imprisonment of 188 to 235 months. (*Id.*) The Court

found that he should be committed to the custody of the Bureau of Prisons for a term of 188 months.  (*Id.*)

"The [United States'] breach of a plea agreement can constitute plain error." *United States v. Branam,* 231 F.3d 931, 933 (5th Cir. 2000) (internal quotations and citations omitted). "In determining whether the terms of the plea bargain have been violated, the court must determine whether the [United States'] conduct is consistent with the parties' reasonable understanding of the agreement." *United States v. Wilder,* 15 F.3d 1292, 1295 (5th Cir. 1994) (internal quotations and citations omitted).  As the party alleging a breach of the MOU, Mullen bears the burden of proving the facts establishing the breach by a preponderance of the evidence. *See Wilder,* 15 F.3d at 1295.  General principles of contract law are applied to interpret the terms of a plea agreement.  *See Hentz v. Hargett,* 71 F.3d 1169, 1173 (5th Cir. 1996).

The MOU in this case specifically permits the use of Mullen's statements given in response to the MOU or subsequent to the MOU to determine his sentence.  (Ct. R., Doc. 72, p. 4.)  The United States agreed not to prosecute Mullen on the basis of information it received from him pursuant to the MOU, with the exception of a prosecution for perjury or if he violated the MOU.  (*Id.*)  This agreement is not the same as agreeing not to use the information to determine Mullen's sentence in connection with the crime to which he pleaded guilty.

At the sentencing hearing, held May 3, 2004, Mullen's attorney advanced his objection to the PSR, in which Mullen asserted that the United States utilized information that he provided regarding the quantity of drugs involved in the transaction. (Ct. R., Doc. 106, p. 3-4.)

Under USSG § 1B1.8, when a defendant agrees to provide information concerning the unlawful activities of others, and "as part of that cooperation agreement the government agrees

that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in that agreement." USSG § 1B1.8. In this case, Mullen's MOU was signed on February 2, 2004, although due to a typographical error, it appears the document was signed before he was even charged with the crime in question, on February 2, 2003. (Ct. R., Doc. 72.) As related at the sentencing hearing, Mullen stated on the date of his arrest in September 2003, that he observed Simpson cook up powdered cocaine into crack. (Ct. R., Doc. 1.) In addition, Simpson signed an MOU on November 22, 2003, and during his proffer he admitted there were 2.5 kilos of cocaine involved. (Ct. R., Doc. 63.)

The evidence shows that the United States did not solely discover the relevant drug quantity in this case from Mullen's cooperative statements in connection with the MOU. The offense conduct presented in the PSR was obtained from independent sources. The Court finds no grounds for *habeas* relief based on Mullen's assertions in regard to USSG § 1B1.8 and his MOU. *See United States v. Miller,* 406 F.3d 323, 335 (5th Cir. 2005), *cert. denied* ___ U.S. ___, 126 S.Ct. 207. It is therefore,

ORDERED AND ADJUDGED that Mullen's motion to vacate [111-1] the previously imposed sentence be, and is hereby, denied. It is further,

ORDERED AND ADJUDGED that this cause be dismissed with prejudice.

SO ORDERED AND ADJUDGED, this the 26th day of September, 2006.

*Walter J. Gex III*
UNITED STATES SENIOR DISTRICT JUDGE